**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NIC BARONE, | : | |
| Plaintiff | : | No. 1:22-cv-01232 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| IDEXCEL, INC., <u>et al.</u>, | : | |
| Defendant | : | |

**<u>MEMORANDUM</u>**

Plaintiff Nic Barone ("Barone") commenced this action in August 2022, asserting gender-based discrimination and other claims against Defendant Honeywell International, Inc. d/b/a Honeywell Intelligrated ("Honeywell") and a related retaliation claim against Defendant Idexcel, Inc. ("Idexcel," and with Honeywell, "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16, and the Pennsylvania Human Relations Act ("PHRA").  (Doc. No. 1.)  Before the Court is Idexcel's motion to dismiss the Title VII retaliation claim asserted against it.[1]  (Doc. No. 11.)  For the reasons that follow, the Court will deny Idexcel's motion.

**I.      BACKGROUND**[2]

In January 2021, Idexcel—a company that "offer[s] staffing, professional, technology,

---

[1]  As to the PHRA claims asserted in the complaint (Doc. No. 1 at 1), in Plaintiff's brief in opposition to Idexcel's motion, he indicates that he included his PHRA claims for notice purposes, is "required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC," and "filed his lawsuit in advance of same because of the date of issuance."  (Doc. No. 13 at 5 n.1.)  The PHRA claims are therefore not implicated here.  Nor are they addressed by Idexcel.  The Court will therefore omit any discussion of those claims, which, in any event, overlap significantly with Plaintiff's Title VII claims.

[2]  This background is drawn from the allegations in Plaintiff's complaint, which the Court has accepted as true for the purpose of deciding Idexcel's motion to dismiss.  <u>See</u> <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

and business services in several states in the United States"—hired Plaintiff as "a direct (W-2) employee" and placed him to "work within Defendant Honeywell, at a UPS Hub/Warehouse" located within Middletown, Pennsylvania.  (Doc. No. 11 ¶¶ 9, 14.)  In that placement, Plaintiff "was directly supervised and managed by management from [] Honeywell."  (<u>Id.</u> ¶ 15.)  He was placed by Idexcel "with the intent that" he would: (1) work for Honeywell; (2) "potentially become full-time and/or hired by [] Honeywell (as a direct employee)"; and (3) report "at all times" to Honeywell's management and work as an employee thereof.  (<u>Id.</u> ¶ 16.)

Plaintiff, who "was hired as a safety coordinator" (<u>id.</u> ¶ 18), "worked for Defendants for a period of approximately 15 months, until his [allegedly] unlawful termination . . . effective April 2, 2022" (<u>id.</u> ¶ 19).  Idexcel "hired and paid" Plaintiff, and "Honeywell's management had the ability to manage [him], discipline [him], give directive to [him], and make decisions regarding [his] employment.  (<u>Id.</u> ¶ 10.)  Further, "Plaintiff was permitted to address his work concerns with [] Honeywell's management and was obligated to follow the policies of []  Honeywell." (<u>Id.</u>)  As a result of this arrangement, Plaintiff asserts that "Defendants may be treated as a single and/or joint employer for purposes of the instant action."  (<u>Id.</u>)  "Throughout his employment with Defendants," Plaintiff alleges that he "was an exemplary employee with no prior history of discipline, and he performed his role very well."  (<u>Id.</u> ¶ 20.)  He avers he "was such a hard and dedicated worker that he worked approximately 85 of the last 89 days in 2022 due to business need, short staffing, and dedication – working up to 7 days a week (and through many weekends, less some Sundays)."[3]  (<u>Id.</u> ¶ 25.)

Plaintiff's primary supervisors on a day-to-day basis were Honeywell's Heidi Donahue ("Donahue") and Regional Supervisor Melissa Giancola ("Giancola").  (<u>Id.</u> ¶ 21.)  "Almost

---

[3]  Because Plaintiff was terminated in April 2022, the statement "85 of the last 89 days in 2022" should presumably read "85 of the last 89 days in 2021."

immediately after Plaintiff began working for Defendants, he observed/became aware of a sexual harassment double standard within [] Honeywell's workplace, permitting female management to engage in any sexually harassing abuse(s) without consequence(s)." (Id. ¶ 22.)  Plaintiff more specifically alleges that he "observed and/or was subjected to sexually harassing, offensive, and unwelcomed comments, gestures, and actions by Donahue and Giancola," includ[ing] but [] not limited to (solely by way of example(s)): (1) "[t]elling people to lick their cunts or suck their dicks"; (2) "[w]alking into men saying they were stud finders; (3) "[w]iping their hands on their crotches and waiving their hands to smell"; and (4) "[a] host of other grotesque statements, inclusive of talking about things they wanted to do sexually."  (Id. ¶ 23.)

Plaintiff attempted to ignore Donahue and Giancola's behavior and "clearly show[ed] his discomfort through his body language and clear discomfort with their comments/conduct, but their inappropriate and disgusting conduct continued unabated."  (Id. ¶ 24.)  The "instances of severe and pervasive conduct were so upsetting to Plaintiff that he complained to Donahue and Giancola and other management about what he perceived to be 'sexual harassment' and unwelcome sexual gestures."  (Id. ¶ 26.)  Plaintiff "even complained of clear gender disparity in the workplace in that a male manager was fired for a single comment, while Donahue and Giancola engaged in sexual harassment pervasively, without ramifications."  (Id. ¶ 27.)

Toward the "end of his employment with Defendants," Plaintiff "become very vocal about his []concerns/complaints of gender discrimination and sexual harassment[.]"  (Id. ¶ 28.) Following an approved period of leave from work in April 2022, Plaintiff "was informed by [] Honeywell's management that he had been terminated effective April 2, 2022[.]"  (Id. ¶¶ 29-30.) Despite Honeywell's knowledge of Donahue and Giancola's harassing and offensive conduct, Honeywell "did not take any meaningful action to correct [the] inappropriate conduct," and

"Donahue and Giancola remain[ed] employed with [] Honeywell following Plaintiff's termination[.]"  (Id. ¶ 31.)  "Plaintiff believes and therefore avers that he was not hired full-time, subjected to a hostile work environment, and ultimately terminated by Defendant Honeywell for his complaints of gender discrimination and sexual harassment."  (Id. ¶ 32.)

After his termination, Plaintiff contacted Idexcel representative Kupali Singh ("Singh") to inform Singh "that he had been subjected to sexual harassment, gender discrimination, and retaliation for complaining of same by [] Honeywell's management during his tenure with [] Honeywell."  (Id. ¶ 33.)  Following his complaints to Singh, "Plaintiff has not been hired, assigned or placed in any other comparable or realistic jobs/assignments by [] Idexcel."  (Id. ¶ 34.)  "Plaintiff believes and therefore avers that Defendant Idexcel has not hired, assigned or placed him in any other comparable or realistic jobs/assignments in retaliation for complaining of violations under Title VII."  (Id. ¶ 35.)

Based on allegations set forth above, Plaintiff asserts—against Honeywell—claims for violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, under theories of gender discrimination, sexual harassment/hostile work environment, and retaliation (Count I).  (Id. ¶¶ 36-44.)  Against Idexcel, Plaintiff asserts a Title VII retaliation claim (Count II).  (Id. ¶¶ 45-49.)  The alleged factual basis for Count II is that, after Plaintiff informed Idexcel that "he had witnessed/been subjected to sexual harassment, gender discrimination, and retaliation in violation of Title VII by [] Honeywell's management during his tenure" with Honeywell, "Plaintiff has not been hired, assigned or placed in any other comparable or realistic jobs/assignments by [] Idexcel, despite requesting same."  (Id. ¶¶ 46-47.)  Plaintiff asserts that Idexcel did so in retaliation for his opposing and complaining about the harassment and discrimination (as well as retaliation in the form of wrongful termination) that he allegedly faced

4

at Honeywell.  (Id. ¶ 48.)

Idexcel filed its motion to dismiss Count II on October 10, 2022, along with a brief in support thereof.  (Doc. Nos. 11, 11-1.)  Plaintiff filed a brief in opposition to the motion on October 24, 2022 (Doc. No. 13), and Idexcel filed a reply brief in support of its motion ten days later, on November 3, 2022 (Doc. No. 18).  Idexcel's motion is therefore ripe for disposition.

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions proffered as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."

See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.

## III.   DISCUSSION

Idexcel moves to dismiss the Title VII retaliation claim asserted against it in Count II of Plaintiff's complaint.  (Doc. No. 11.)  To restate the basis of Plaintiff's claim against Idexcel, he alleges that Idexcel, in retaliation for informing its representative about the sexual harassment, gender discrimination, and retaliation he experienced at Honeywell, has not "hired, assigned or placed [him] in any other comparable or realistic jobs/assignments . . . , despite requesting same."  (Id. ¶¶ 46-47.)  In seeking an order dismissing Count II, Idexcel argues that Plaintiff has failed to plausibly allege the elements of a Title VII retaliation claim and, further, failed to plausibly allege the existence of an employment relationship with Idexcel.  (Doc. Nos. 11 at 4-7, 11-2 at 4-10.)

Title VII "prohibits employment discrimination based on an individual's race, color, religion, sex, or national origin."  See Williams v. Pa. Hum. Rels. Comm'n, 870 F.3d 294, 298 (3d Cir. 2017).  To state a cognizable Title VII retaliation claim against Idexcel, Plaintiff must plausibly allege that: (1) he "engaged in activity protected by Title VII"; (2) Idexcel, as his sole or joint employer, "took an adverse employment action against" him; and (3) "there was a causal connection between [his] participation in the protected activity and the adverse employment action."  See Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).  As a threshold matter, therefore, Plaintiff must allege "the existence of an 'employment relationship' with [Idexcel]."  See Faush v. Tuesday

Morning, Inc., 808 F.3d 208, 212 (3d Cir. 2015).  Because the existence of an employment

relationship is a precondition to any Title VII claim, the Court will first address that inquiry and

then turn to the three elements of a Title VII retaliation claim.

### A.      Employment Relationship

In the Title VII context, to determine "whether a hired party is an employee under the

general common law of agency," courts "consider the hiring party's right to control the manner

and means by which the product is accomplished."  See id. (quoting Graves v. Lowery, 117 F.3d

723, 727 (3d Cir. 1997)).  That determination is guided by a consideration of the "Darden

factors," which derive from the United States Supreme Court's decision in Nationwide Mut. Ins.

Co. v. Darden, 503 U.S. 318 (1992).  See Faush, 808 F.3d at 213 (stating, "it is clear that the

Darden test applies to Title VII cases").  The "inquiry under Darden is not which of two entities

should be considered the employer of the person in question," as "[t]wo entities may be 'co-

employers' or 'joint employers' of one employee for purposes of Title VII."  Id. at 215.

Darden "provides a non-exhaustive list of relevant factors," to wit:

> [T]he skill required; the source of the instrumentalities and tools; the location of
> the work; the duration of the relationship between the parties; whether the hiring
> party has the right to assign additional projects to the hired party; the extent of the
> hired party's discretion over when and how long to work; the method of payment;
> the hired party's role in hiring and paying assistants; whether the work is part of
> the regular business of the hiring party; whether the hiring party is in business; the
> provision of employee benefits; and the tax treatment of the hired party.

See id. at 214 (quoting Darden, 503 U.S. at 323).  The Third Circuit, in applying the Darden test,

has "generally focused on 'which entity paid [the employees'] salaries, hired and fired them, and

had control over their daily employment activities.'"  See id. (alteration in original) (quoting

Covington v. Int'l Ass'n of Approved Basketball Offs., 710 F.3d 114, 119 (3d Cir. 2013)).

Because the test does not contain a "shorthand formula or magic phrase that can be

applied to find the answer," all "of the incidents of the relationship must be assessed and weighed with no one factor being decisive." See id. (quoting Darden, 503 U.S. at 324). The "the precise contours of an employment relationship can only be established by a careful factual inquiry and thus may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage." See Bailey v. Millenium Grp. of Delaware, No. 21-1752, 2022 WL 3754617, at *2 (3d Cir. Aug. 30, 2022) (unreported) (first quoting Graves, 117 F.3d at 729; and then quoting Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 768 n.5 (3d Cir. 2013)).

As one court has stated, "[w]hen a plaintiff alleges some facts satisfying joint employer theory factors, even where there is a 'thin' factual record," the "pleading survives dismissal." See Rippy v. Phila. Dep't of Pub. Health, No. 19-cv-01839, 2019 WL 4849439, at *5 (E.D. Pa. Sept. 30, 2019). As another court stated: "the joint employer and the single employer doctrines involve fact-intensive analyses" that "are generally inappropriate at the motion to dismiss stage." See Hayes v. Waddell & Reed, Inc., No. 12-cv-00293, 2013 WL 5434139, at *9 (W.D. Pa. Sept. 26, 2013).[4]  The same court opined: "[a]t the motion to dismiss stage, it need not be 'entirely clear' that the factual allegations in the plaintiff's complaint will ultimately prove 'joint employer' status. Rather, the inquiry is whether a plaintiff 'is entitled to offer evidence to support the claims.'" See id. (citation omitted) (first quoting Myers v. Garfield & Johnson Enter., Inc., 679 F. Supp. 2d 598, 611 (E.D. Pa. 2010); and then quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)).

Here, Plaintiff alleges that he was a "W-2 employee" of Idexcel and that Idexcel hired

---

[4] While Plaintiff alleges that Idexcel and Honeywell should be "treated as a single and/or joint employer" (Doc. No. 11 ¶ 10) (emphasis added), his brief in opposition does not reference the single-employer doctrine (Doc. No. 13). For that reason, and given the Court's conclusion, infra, that Plaintiff has plausibly alleged a joint-employer relationship, it will not separately address whether he has also alleged an employment relationship under the single-employer doctrine.

him, placed him with Honeywell, paid him, and, ultimately, decided not to provide him with any further appropriate work assignments.  Construing these allegations in a light most favorable to Plaintiff—and drawing all inferences from them in his favor—the Court agrees with Plaintiff that he has plausibly alleged that he had an employment relationship with Idexcel.  As one court has stated, the fact that Idexcel paid Plaintiff is "a significant factor in itself," see Lara v. Samuel Adams Pa. Brewing Co., LLC, No. 5:20-cv-00498, 2020 WL 5211206, at *13 (E.D. Pa. Sept. 1, 2020), and it is generally understood that "[a] client of a temporary employment agency typically qualifies as an employer of the temporary worker during the job assignment" for Title VII purposes.  See Faush, 808 F.3d at 219 (alterations in original) (emphasis added) (quoting Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, Dec. 3, 1997, 1997 WL 33159161, at *5-6).  At the motion to dismiss stage, the Court must simply determine (as it has) that Plaintiff has alleged sufficient facts upon which he should be permitted to develop his claims through discovery before any determination can be made as to whether he was jointly employed by Idexcel and Honeywell for the purpose of his Title VII claim against Idexcel.

Idexcel, in arguing to the contrary, states that all Plaintiff has alleged is that "he was a W-2 employee of [] Idexcel" (Doc. No. 11-2 at 8) and that his complaint "is silent as to whom, if anyone, maintained records relating to [his] attendance, performance, contract extensions, salary, vacation time, and/or termination" (id. at 9).  Even assuming, as Idexcel appears to, that Plaintiff's allegations are "thin" in this regard, they suffice to suffice to support a plausibly inference that he had an employment relationship with Idexcel as well as Honeywell.  Indeed, one court has noted that "[t]he relationship between a placement agency and the employer at which the worker is placed is a classic example of joint employment."  See Moskowitz v.

Neshaminy Sch. Dist., No. 20-cv-05016, 2022 WL 4225398, at *6 (E.D. Pa. Sept. 13, 2022)

(citing Myers, 679 F. Supp. 2d at 607, and Graves, 117 F.3d at 727, to highlight "the relevant

factors" regarding joint employment).  The Court will therefore deny Idexcel's motion to dismiss

Count II on this basis and turns to the elements of his Title VII retaliation claim.

> **B.      Title VII Retaliation Claim**

As discussed above, Title VII retaliation claims turn on three elements according to

which Plaintiff must plausibly allege: that he engaged in protected activity; that Idexcel took an

adverse employment action against him; and that the protected activity and adverse action were

causally connected.  See Moore, 461 F.3d at 340-41.  The first element—protected activity—can

be established through allegations of "informal protests of discriminatory employment practices

such as making complaints."  See Excellent v. Bryn Mawr Tr. Co., No. 21-cv-03632, 2022 WL

15524949, at *3 (E.D. Pa. Oct. 27, 2022).[5]  The second element—materially adverse action—can

be established through allegations of an "action . . . that would have dissuaded a reasonable

worker from making or supporting a charge of discrimination."  See Moody v. Atl. City Bd. of

Educ., 870 F.3d 206, 220 (3d Cir. 2017).  The third element—causal connection—can be

established if the "temporal proximity" between the alleged protected activity and adverse action

is "unusually suggestive," see Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015)

(quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)), and

also by a "broad array of evidence" supporting an "inference of retaliatory animus," see LeBoon,

503 F.3d at 232-33 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir.

---

[5] See also Dunston v. Boardwalk 1000, LLC, No. 19-cv-00512, 2020 WL 4208116, at *7 (D.N.J.
July 22, 2020) (citing cases, e.g., Moore, 461 F.3d at 343, and noting that "[i]nformal verbal
complaints are [] sufficient . . . to constitute protected activity"); Bossi v. Bank of Am., No. 3:14-
cv-02301, 2016 WL 4446444, at *3 (M.D. Pa. Aug. 19, 2016) (noting that, "[t]o qualify" as a
protected, "opposition activity, an employee need not engage in the formal process of
adjudicating a discrimination claim").

2000)).

Having carefully considered the parties' contentions as applied to the allegations in Plaintiff's complaint, the Court concludes that Plaintiff has plausibly alleged all three elements of his Title VII retaliation claim against Idexcel.  As to the first element, Plaintiff avers that he voiced verbal complaints to Idexcel stating that he was subjected to "sexual harassment, gender discrimination, and retaliation for complaining of same by [] Honeywell's management."  (Doc. No. 1 ¶ 33.)  Accepting those alleged verbal complaints as true, and noting that Plaintiff has plausibly alleged that Idexcel was his joint employer, the Court concludes that Plaintiff has sufficiently pleaded a protected activity in the form of an informal protest of discriminatory employment practices.  Stated differently, Plaintiff plausibly alleges that he opposed, by verbal complaints to a joint employer, unlawful discrimination, thereby establishing the first element of his Title VII retaliation claim against Idexcel.

Concerning the second element (materially adverse action), Plaintiff avers that his alleged joint employer, Idexcel, refused to "hire[], assign[] or place[] him in any other comparable or realistic jobs/assignments in retaliation for complaining of violations under Title VII."  (Id. ¶ 35.) Drawing all inferences from the allegations in a light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly alleged that Idexcel took action that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.  That is, Plaintiff has plausibly alleged that Idexcel's refusal to appropriately hire/place/assign him following his verbal complaints of discrimination would deter a reasonable worker from making similar complaints to Idexcel about a joint employer such as Honeywell.[6]

---

[6] Moreover, as Plaintiff notes, "[t]he anti-retaliation provision of Title VII . . . also makes it unlawful for an employment agency to retaliate against 'any individual' because he or she opposed an unlawful employment practice."  See Deeter v. Trinity Servs. Grp., Inc., No. 14-cv-

Regarding the final element (causal connection), Plaintiff alleges that in response to his protected activity—complaining to Idexcel, his joint employer, about discriminatory practices—Idexcel took the materially adverse action of refusing to appropriately hire/assign/place him following the complaints.  Given the timing of the alleged protected activity and adverse action, and noting the liberal pleading standards embodied in the Federal Rules of Civil Procedure, the Court concludes that Plaintiff has plausibly alleged a causal relationship between his complaints and Idexcel's alleged adverse conduct.  Accordingly, Plaintiff has plausibly alleged all three elements of his Title VII retaliation claim.

Idexcel advances several unpersuasive arguments in support of its position that Plaintiff has failed to plausibly allege the elements of his Title VII retaliation claim against it.  Idexcel argues, for example, that the "'protected activity' did not occur at Idexcel," arguing that, "[s]ince Idexcel did not control the work environment in which Plaintiff worked and about which he complained, this is not the type of activity that is protected by Title VII."  (Doc. No. 11-2 at 5.)  Idexcel also argues that Plaintiff has failed to establish his Title VII retaliation claim because he "cites no facts that would create an obligation for Idexcel to protect him against, or investigate Honeywell's employees, particularly following a termination by Honeywell."  (Id. at 6.)  In a similar vein, Idexcel argues that that "the alleged retaliation by one employer ([Idexcel]) is too remote in connection with the alleged discrimination of a different employer (Honeywell) to have this Court impute a causal connection between them."  (Doc. No. 18 at 4.)

The above arguments, as well as others raised in Idexcel's briefing, appear to converge on the proposition that Plaintiff cannot state a claim against Idexcel based on complaints of discrimination that occurred at Honeywell.  The Court is not persuaded by this line of argument.

00215, 2015 WL 5602594, at *3 (W.D. Pa. Sept. 23, 2015) (citing 42 U.S.C. § 2000e-3(a)). Defendant, in its reply brief, does not argue to the contrary.  (Doc. No. 18.)

Significantly, as Idexcel acknowledges, "the threshold for retaliation activities is relatively low and far reaching[.]"  (Id. at 6) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).  "The scope of [Title VII's] antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."  Burlington, 548 U.S. at 67.  Further, Idexcel's arguments wrongly characterize Plaintiff's claim as asserting that Idexcel retaliated against him for the discriminatory conduct that allegedly occurred at Honeywell.  It is clear from Plaintiff's complaint that he is asserting a different claim—i.e., that Idexcel, a joint employer, retaliated against him (by not appropriately hiring/assigning/placing him) in response to complaints of discrimination made directly to Idexcel.  Notably, Idexcel has not cited to any authority for the position that an employee cannot maintain a Title VII retaliation claim based on a complaint of discrimination made to a staffing agency/joint employer where the discrimination occurred at the workplace.  In the absence of such authority, and at this stage of the proceedings, the Court presumes that such a claim is not beyond the scope of Title VII.

Idexcel raises other arguments—including that Plaintiff's allegations of Idexcel's post-complaint refusal to offer him "comparable" or "realistic" job opportunities lack any "context for what those adjectives mean" (Doc. No. 18 at 3)—but that argument, as well as the remaining arguments in Idexcel's briefing, are unavailing at this stage of the proceedings, where the Court is required to draw all reasonable inferences from the complaint's allegations in a light most favorable to Plaintiff.  In so holding, the Court emphasizes two long-standing principles that apply in the Title VII context: first, "Title VII is a remedial statute, so it must be interpreted broadly"; and second, "there is a low bar for establishing a prima facie case of employment discrimination."[7]  See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470

---

[7]  Indeed, "[a]t the pleading stage, 'a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that

F.3d 535, 539 (3d Cir. 2006).  Accordingly, the Court will deny Idexcel's motion to dismiss the Title VII retaliation claim asserted against it in Count II of Plaintiff's complaint.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Idexcel's motion to dismiss the Title VII retaliation claim asserted against it in Count II of Plaintiff's complaint.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

discovery will reveal evidence of the necessary element.'"  See Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502, 517 (E.D. Pa. 2012); see also Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004), as amended (Dec. 20, 2004).

14